IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 01-cv-01807-MSK-MJW

BANK ONE, N.A. (successor to Bank One, Colorado, N.A.), and
BANK ONE TRUST COMPANY, N.A., as Trustee of the Dora Lucille Jamison Trust and the
Jamison Family Trust,

      Plaintiffs,

v.

C.V.Y. CORPORATION, d/b/a Your Valet Cleaners, and
JOHNNY ON THE SPOT, INC.,

      Defendants.

BOULDER CLEANERS, INC., and
JOHN'S CLEANERS, INC.,

      Cross-Plaintiffs,

v.

C.V.Y. CORPORATION, d/b/a Your Valet Cleaners,

      Cross-Defendant.

## ORDER ON MOTIONS

THIS MATTER comes before the Court on a Joint Motion for Approval of Settlement Agreement with Contribution Protection **(#492)** filed by the Plaintiffs, Bank One, N.A., and Bank One Trust Company, N.A. ("Bank One"), and the Defendants, C.V.Y. Corporation ("CVY") and Johnny on the Spot, Inc. ("JOS"). The Cross-Plaintiffs, Boulder Cleaners, Inc. and John's

Cleaners, Inc., filed responses in opposition **(#499, #508)**, and CVY and JOS filed reply briefs **(#503, #513)**. Also before the Court is an Unopposed Motion to Set Briefing Schedule for Dispositive Motions **(#512)** filed by Boulder Cleaners and John's Cleaners. Having considered the same, the Court

**FINDS** and **CONCLUDES** that:

## I. Jurisdiction

For purposes of this Order, the Court exercises subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367.

## II. Background

### A. Factual Background

The claims in this case arise from perchloroethylene[1] contamination of a parcel of real property in Boulder, Colorado which has been used for the operation of dry cleaning businesses. Since 1978, the Plaintiff, First National Bank in Boulder (now Bank One Trust Company, NA) as Trustee for the Dora Lucille Jamison Marital Trust and Jamison Family Trust, has been the owner of the property.

Between 1948 and 1999, a succession of dry cleaning businesses operated on the property. Between 1967 and 1991, CVY leased the property and either operated a dry cleaning business or subleased the property to others who did so.[2] From 1986 to 1991, CVY leased the

---

[1] Percholorethylene is a substance used by dry cleaning businesses.

[2] At some point CVY operated the business in conjunction with JOS. JOS merged into CVY in 1985. Although JOS is named as a Defendant in this action, because its pertinent interest and obligations are synonymous with those of CVY, all future references are to CVY.

premises to PURUS, Inc. which, in turn, sold its business and assigned its sublease rights to The Dugout, Inc. in 1991. In 1993, the Dugout entered into a new lease with Bank One, then split into two entities, Boulder Cleaners and John's Cleaners.[3] Boulder Cleaners operated dry cleaning businesses on the property into 1999.

### B. Litigation Framework

In this lawsuit[4] the parties have asserted both federal and state law based claims, all with the purpose of apportioning the cost of cleaning up the percholorethylene contamination. The federal claims are premised upon the Resource Conservation and Recovery Act, and the Comprehensive Environmental Response, Compensation and Liability Act of 1980 ("CERCLA"). The Colorado law claims are tort and contract based. The tort claims are for trespass and negligence; the contract claims are for breach of contract, indemnification and enforcement of defense obligations arising from various lease and purchase agreements. All of the claims, despite their legal theories, seek compensation for costs associated with contamination caused by other parties.

Specifically, Bank One asserted claims against all of the defendants for response costs, contribution, and other relief for its clean-up efforts under CERCLA. In addition, it claimed

---

[3] For all practical purposes, Boulder Cleaners and John's Cleaners are united in interest here. Accordingly, the Court will refer to both entities collectively as "Boulder Cleaners."

[4] This is one of two lawsuits involving the property and its contamination. An independent state court lawsuit (Case No. 2003-CV-0215) is currently pending before the Denver District Court. In it, Boulder Cleaners and John's Cleaners seek indemnification and costs of defending claims against them arising from contamination caused by the actions of CVY or its principals. These claims are brought against John A. Yelenick (CVY's owner and president) and three other members of the Yelenick family, but in all other respects appear to be identical to cross-claims asserted against CVY in this case.

breach of contract, trespass, and negligence. CVY asserted counterclaims against Bank One for contractual indemnity, CERCLA response costs, and negligent misrepresentation. CVY also asserted cross-claims against Boulder Cleaners for contribution under CERCLA and for indemnification and breach of terms in a lease assignment dated September 30, 1991.

Boulder Cleaners asserted counterclaims against Bank One for negligent misrepresentation, fraud, and for contractual indemnity. Boulder Cleaners also asserted a cross-claim against CVY for indemnification and defense under the same lease assignment, dated September 30, 1991.

Two settlements have been reached. The first resolved all of the claims between Bank One and Boulder Cleaners. For the payment of a specific sum to Bank One and without any admission of liability, all claims and counterclaims were mutually released. This settlement was approved by the Court on October 31, 2002. However, since then, its effect upon the cross-claims between CVY and Boulder Cleaners has been the subject of repeated controversy.

Upon approval of the settlement, the Court initially dismissed CVY's cross-claims against Boulder Cleaners without prejudice. **(#196)** Since then, CVY has sought reconsideration or clarification of that decision at least five times. Each time, the Court has concluded that the settlement fixed Boulder Cleaners' liability and extinguished CVY's contribution claims against it. **(#236, #260, #351, #458, #484).**

Although the Court ruled that the settlement extinguished CVY's cross-claim against Boulder Cleaners, it found that settlement did not affect the cross-claims by Boulder Cleaners

against CVY, much less the claims as between CVY and Bank One.[5] Accordingly, all of the remaining claims were to proceed to trial. The parties agreed to sever the trial, so that Bank One's claims against CVY would be tried first, but with the concession that Boulder Cleaners would be bound by any factual determination that apportioned responsibility for the contamination among the parties. Thus, trial was set on the claims between Bank One and CVY. Before trial could occur, Bank One and CVY reached the settlement at issue here. As in the first settlement, Bank One was paid a specified sum for a release of all claims between Bank One and CVY, but without any admission of liability.

This second settlement has been submitted for Court approval and is the subject of this Order. In addition to requesting the Court's approval, CVY seeks a determination that it is protected from the remaining cross-claims of Boulder Cleaners. Boulder Cleaners does not oppose approval of the settlement agreement and concedes that it acts to bar contribution claims under CERCLA, but contends that it is entitled to pursue its remaining contractual cross-claims for indemnification and defenses against CVY.

### III. Issues Presented

The issues are: (1) whether the Court should approve the settlement agreement; and (2) whether the settlement agreement extinguishes Boulder Cleaners' cross-claim against CVY for indemnification and defense.

---

[5] Subsequently, the Court dismissed CVY's state law counterclaims in an Order **(#381)** granting a motion for summary judgment filed by Bank One. CVY also abandoned its CERCLA counterclaim, leaving it with no counterclaims against Bank One.

## IV. Analysis

### A. Approval of the Settlement

The parties agree that the settlement is reasonable and accomplishes the goals of CERCLA. The settlement, when considered with the prior one, addresses all of the actual contamination cleanup costs incurred, or anticipated to be incurred. For these reasons, it is approved.

### B. The Effect of the First and Second Settlements Upon Cross-Claims between CVY and Boulder Cleaners

The question of the effect of this settlement upon Boulder Cleaners' contractual cross-claims against CVY presents the same issue raised by the parties with regard to the effect of the first settlement upon the contractual cross-claims of CVY against Boulder Cleaners. The Court's reasoning with regard to the first settlement is also determinative with regard to the issue relative to the second settlement. Thus the following explanation will apply to both settlements and their effects upon the contractual cross-claims between CVY and Boulder Cleaners.

These cross-claims arise from written provisions in documents evidencing the transaction by which The Dugout, Inc., purchased the assets of the cleaners owned by PURUS, Inc. The claims are based upon language in what appears to be two documents[6] - an asset purchase agreement that became effective on September 30, 1991 (the Agreement) and a lease assignment of the same date (the Assignment) to The Dugout, Inc. CVY asserts that, as the Dugout's successor, Boulder Cleaners has obligations under the Assignment. Boulder Cleaners asserts that, as PURUS's predecessor, CVY is bound by the terms of the Agreement.

---

[6] These may be part of the same document. Unfortunately, the Court the does not have the actual document and is, instead, limited to the descriptions contained in the cross-claims.

6

CVY's cross-claim is premised upon the following language in the Assignment:

> In consideration of the assignment, [Boulder Cleaners] hereby assumes and agrees to make all the payments and perform all the covenants and agreements contained in the lease, by the Tenant therein agreed to be made and performed.

The lease further provides that the tenant shall indemnify and save the landlord harmless in the event of:

> <u>liabilities</u>, damages or penalties and any costs, expenses or claims of any kind or nature <u>arising out of</u> any construction, alterations or <u>additions or otherwise as incurred by Tenant</u>, including Landlord's reasonable attorney fees. Such indemnification shall apply to any damages or injury to person or property. (Emphasis added)

Boulder Cleaners' cross-claim is premised upon the following language from the Agreement that requires CVY (as precedessor of PURUS) to:

> protect, defend, indemnify and hold harmless . . . against and in respect of any all loss, damage or expense occasioned by any . . . <u>obligations of Seller</u> . . . <u>which are in existence</u> or which have accrued prior to the date of closing. (Emphasis added)

And to:

> protect, defend, indemnify, and hold [Boulder Cleaners] . . . harmless against and in respect to any and all loss, damage or expenses occasioned by any breach of the representations, warranties, covenants or agreements of the parties herein contained.

Although the parties characterize the applicable contractual provisions as creating "indemnification" and "defense" obligations, these labels are misleading. By their terms, these provisions simply obligate a party <u>responsible</u> for some damage or injury to the property to reimburse the other party for losses or costs arising from the responsible party's conduct. Rather

7

than classic idemnification,[7] these provisions merely restate customary principles of contribution. For example, there are two conditions precedent to an obligation arising under the terms of the contracts: (1) one party must incur a cost or expense, (2) which arises due to some conduct by the other party – either an "addition" to the property by the Tenant that causes liability to be incurred by the Landlord; or a condition that was in existence when the Tenant received the property, thereby making the Landlord responsible to the Tenant for it. In either instance, this "indemnification" obligation exists only to the extent that a party is legally responsible for causing (or allowing to be caused) the contamination. Hence, despite their designation as "indemnification" claims, these claims are simply the contractual corollary to a tort claim for contribution.

CVY's entitlement to "contractual indemnification" from Boulder Cleaners thus requires proof that CVY has paid or is being held responsible for contamination of the property caused by Boulder Cleaners. Similarly, Boulder Cleaners' "indemnification" claim requires proof that they have paid or are being held responsible for contamination caused by CVY. Boulder Cleaners' claim for defense costs under the Agreement arises only to the extent that Boulder Cleaners is forced to incur costs defending against a claim arising from contamination caused by CVY.

At the time the first settlement was submitted, the Court considered the application of the Uniform Comparative Fault Act and the Uniform Contribution Among Tortfeasors Act[8] upon the

---

[7] In classic indemnification, one person is obligated to pay all costs/expenses incurred by another other regardless of fault. In the classic case, the only condition precedent to the obligation is that the reciprocal party have made the specified payment or incurred the specified cost. *See Brochner v. Western Ins. Co.*, 724 P.2d 1293, 1295-99 (Colo. 1986) (abolishing classic, common law indemnification).

[8] The Uniform Comparative Fault Act and the Uniform Contribution Among Tortfeasors Act are not actual statutes but instead are freestanding collections of uniform laws for individual states to adopt,

cross-claims among the parties. Following the majority of courts which have addressed the issue, the Court applied the proportionate share rule found in §§ 2 and 4 of the Uniform Comparative Fault Act, finding that the settlement extinguished all contribution claims against Boulder Cleaners. In doing so, the Court observed that both the Uniform Comparative Fault Act and the Uniform Contribution Among Tortfeasors Act, as adopted by the Colorado legislature, operate in the same manner with regard to a claimant's settlement with one, but not all, joint tortfeasors. Both acts apply the proportionate share rule.[9]

The proportionate share rule credits (or satisfies) the claimant's claim with the full proportionate share of the settling tortfeasor's liability, rather than the amount actually paid by the settling tortfeasor. In so doing, it places the risk of an inadequate settlement on the claimant, and extinguishes any claim for contribution against the settling defendant by any joint tortfeasor. So, for example, when Bank One settled with Boulder Cleaners, Bank One's claim against CVY was reduced by the greater of the amount of the settlement, or **all** costs or recovery attributable to contamination caused by Boulder Cleaners. Moreover, both the Uniform Comparative Fault Act

---

either with or without modification. Colorado has adopted a modified version of the Uniform Contribution Among Tortfeasors Act. *See* §§ 13-50.5-101, C.R.S. *et seq.*

[9] The Uniform Comparative Fault Act provides in Section 6 that "A release, covenant not to sue, or similar agreement entered into by a claimant and a person liable discharges that person form all liability for contribution, but it does not discharge any other persons liable upon the same claim unless it so provides. However, the claim of the releasing person against other persons is reduced by the amount of the released person's equitable share of the obligation, determined in accordance with the provisions in Section 2." Section 2 allows the Court or jury to apportion the share of liability attributable to tortfeasors who have settled.

As adopted in Colorado, the Uniform Contribution Among Tortfeasors Act provides in 13-50.5-105, C.R.S.: "(1) When a release or covenant not to sue or not to enforce judgment is given in good faith to one of two or more persons liable in tort for the same injury . . . (b) It discharges the tortfeasor to whom it is given from all liability for contribution to any other tortfeasor."

Neither statute limits application of these provisions based upon the ordering of sequential settlements.

and the Uniform Contribution Among Tortfeasors Act insulate Boulder Cleaners, as the settling Defendant, from claims for contribution against it. There is no inequity to such a ruling, as the proportionate share rule ensures that CVY is protected from having to pay Bank One for contamination caused by Boulder Cleaners. Because CVY could never be held to pay for contamination or resulting costs caused by Boulder Cleaners, it no longer had need for a contribution claim against Boulder Cleaners, nor a loss subject to contribution ("indemnification") under the applicable terms of the Agreement or lease.

The same is now true for Boulder Cleaners' claim for indemnification of costs arising from contamination caused by CVY. The second settlement addresses the entire proportionate liability of CVY to Bank One. Boulder Cleaners cannot be required to pay for any contamination caused by CVY. Hence, they have no cross-claim against CVY for contribution in tort, nor as "indemnification" under the Agreement. As to ultimate liability for contamination or clean-up costs, the two settlement agreements operate to satisfy all liability of Boulder Cleaners and CVY to Bank One for contamination and, therefore, extinguish the reciprocal cross-claims.

This leaves, however, Boulder Cleaners' claim for reimbursement of legal costs incurred in their defense. This claim is not resolved by extinguishing the contribution claim, because it is possible that Boulder Cleaners has incurred legal costs and expenses resulting from CVY's contamination of the property. Unfortunately, to resolve this issue may require a full determination of the proportionate responsibility of Boulder Cleaners, CVY and Bank One, which the parties have thus far sought to avoid.

However, this one remaining cross-claim is premised upon Colorado law. It is alleged in the pending state court action. Because all federal claims in this action have been determined, the

Court, in exercise of its discretion pursuant to 28 U.S.C. § 1367(c)(3), declines to exercise supplemental jurisdiction over this state-law claim.

**IT IS THEREFORE ORDERED** that:

(1) The Joint Motion for Approval of Settlement Agreement with Contribution Protection **(#492)** is **GRANTED** in part and **DENIED** in part.

(2) The settlement agreement between Bank One, CVY and JOS is **APPROVED**.

(3) The cross-claim by Boulder Cleaners and John's Cleaners against CVY is **DISMISSED**.

(4) The Clerk of Court is directed to close this case.

Dated this 21st day of February, 2008

        **BY THE COURT:**

        *Marcia S. Krieger*
        _____

        Marcia S. Krieger
        United States District Judge